May it please the court, Pratik Shah on behalf of Appellant Lummi Nation. As a preliminary matter, I'll be referring to this demonstrative map, Judge Bayat's ER-171 again. This is the map that was in front of Judge Bolt in the 1974 proceeding, in which he cited specifically when discussing the Lummi Nation's fishing rights. And it was also before this court in 2000 when it issued its 2000 decision. Now the question before you today is whether this court's 2000 decision, sub silentio, excluded the Lummi from fishing the disputed waters at issue in this case. And that is an area west of Whidbey Island, the northern part of Whidbey Island and south of the San Juan Islands and Harrow Strait. And that area, I'll point out for you on the map, here's northern Whidbey Island, so we're talking about the waters west of here and south of San Juan. So it's essentially this- Mr. Said, I can't see where you're pointing. Sure, so Judge Bayat, it's the area west of northern Whidbey Island on your map on ER-171 and south of the San Juan Islands and Harrow Strait. Now in that 2000 decision, this court expressly deemed Admiralty Inlet as part of the Lummi's fishing area within the meaning of Judge Bolt's 1974 decree. That is because, this court explained, the inlet would have been a natural passageway for the Lummi Indians traveling from the San Juan Islands, which is an undisputed Lummi fishing area, to the present environs of Seattle. May I ask you a question? So simply because travelers are transversing an area does not make it the usual and a custom fishing place, does it? No, it does not, Your Honor. You're correct. That is the transit rule. And that was an argument made to this court in 2000. But the transit rule does not apply de novo here because what we have here is we're interpreting, you are interpreting, Judge Bolt's 1974 decree. In his 1974 decree, he said that the Lummi unaccustomed and fishing area, accustomed and usual fishing area, conveys from the northern Puget Sound waters from Fraser River to the north, that's all the way at the top of your map over here, down to the present environs of Seattle, the waters of northern Puget Sound encompassing those waters. The court was starting from that premise and it said, now to determine whether waters within that premise are covered, then we can either look for evidence of fishing or travel. So in that circumstance. What about the sub-proceedings that have taken place since Judge Bolt's determination? Do we ignore those? No, Your Honor, you do not ignore those. In the 2000 decision, the court evaluated the sub-proceedings that had taken before. 89-2, is that what you're talking about? 89-2, right. In 89-2, didn't Judge Rothstein look at the columns suggestion that this entire, that the columns UNA in this area was not included and the counter-designation from your client saying, yes, it was. Wasn't that squarely before? That was before the district court, Your Honor. It was before this court. That's where Judge Rothstein sits, right? The district court? Yes, Your Honor, it was before the district court and it was before this court of appeals in 2000. What this court. I'm aware of that, I was on the panel. Yes, Your Honor. And what this court said in that decision was that the admiralty inlet is in. Get to that in a second. Sure. I'd like you to tell me if you agree that before Judge Rothstein, she had squarely before her your opponent's position that this was, the waters we're talking about, the disputed area was not part of your client's UNA and your counter-designation that it was. Yes, Your Honor. That was squarely before her. That was squarely before. And she said, I don't see any difference between the, if you will, the negative request from the columns that you were not included and the positive request, if you will, from your client that it is. Yes, Your Honor, I agree with all of that. What do we do with that? Okay, so what this court did is admiralty inlet in, which I just talked about, and what this court also said was that the Strait of Juan de Fuca was an excluded area. Now, the key question in this case is, what did this court mean when it said the Strait of Juan de Fuca is out? I agree with you entirely that that's certainly the question that's before us. What I'm struggling with is whether Judge Rothstein had squarely before her the positions that are being argued right now by the two parties. Your Honor, Judge Rothstein had the entire disputed area before her. But here is why Judge Rothstein's opinion does not control here, because this court issued the intervening decision in 2000, which excluded the Strait of Juan de Fuca. The other side is arguing, in excluding the Strait of Juan de Fuca, this court also excluded the entire disputed waters. Now, here's how this court described. Before we move on, so is it your position that but for the Ninth Circuit's decision in 2000, Judge Rothstein's decision would have precluded fishing rights for your client? Yes, Your Honor. We don't dispute that that was decided by Judge Rothstein. The question is the effect of this court's 2000 decision. What this court said, again, was that the Strait of Juan de Fuca is out, but critically, here's how the court described the Strait of Juan de Fuca. It described it, and this is at ER 64, which is 235 F3D 451 from this court's prior opinion. It described it as west of the other Lummi-designated fishing areas. Now, the other Lummi-designated fishing areas that this court described were those described by Dr. Lane back in 1974. That is the San Juan Islands, Haro Strait, all of these areas in here. And ER 171 will show those areas. Now, the court said is that when we're talking about the Strait of Juan de Fuca, we're talking about the area west of that. So all this area here, the Strait of Juan de Fuca to the west. Just a suggestion. You'd be better, sir, to use specific description for Judge Bea's benefit than this, and here, and that, and there. Absolutely, Your Honor. So Judge Bea, ER 171, Strait of Juan de Fuca, they describe as west of the designated areas, which include the San Juan Islands and Haro Strait. Now, if the area, if the Strait is west of those areas, it cannot possibly include the disputed waters at issue in this case, which lie to the south and east of San Juan Island and Haro Strait. That is a geographic impossibility that the district court does not deal with. Now, the second reason, if you look at the terms of the 2000 decision, that it could not have possibly excluded the disputed areas is it conflicts with the common definition of a strait. The common definition, well-accepted definition of a strait is a body of water, a narrow body of water between two land masses connecting two larger bodies of water. If you look at the map, ER 171, it's connecting the Pacific Ocean to the west to the disputed body of water, which we call the mouth of Puget Sound, to the east. Under the other side's view and under the district court's view, it would be subsuming the entire disputed waters such that it would be emptying into Whidbey Island. That is not a body of water, so it is not a common definition of a strait. Third, the district court's reading of this court's 2000 decision puts it in conflict with the 1988 decision that this court rendered in Tulalip v. Lummi. Judge Beezer. You're talking about, excuse me, Judge Martinez's ruling at this point? Yes, I'm talking only about Judge Martinez's ruling. And in 1988, Judge Beezer, who wrote both the 1988 decision and the 2000 decision, in the 1988 decision, he was describing the waters west of northern Whidbey Island, part of the disputed area in this case. And here is what Judge Beezer said. Quote, those are waters, quote, Lummi traditionally fished in. That's at 841 F2D at 318. Yet the district court reads the 2000 decision as subsuming some of those very disputed waters as part of the Strait of Juan de Fuca and thus beyond Lummi fishing rights. It's hard to believe that this court silently would have intended to contradict its earlier 1988 opinion. The fourth reason, I think, that you can't read the 2000 decision as broadly subsuming the entire disputed waters is because both the court in its 2000 decision and the other side in its appellate brief to the court cites the statements of Dr. Lane. That was the 1974 expert. She was a witness for the other side in the 89-2 subproceedings. And when she describes all of the waters that were in front of the court in 2000, she starts with the Strait of Juan de Fuca. And then she says, in addition to the Strait of Juan de Fuca, here's how she describes the other waters. Quote, the open marine waters beyond the immediate shore southwesterly of the San Juan Islands and westerly of northern Whidbey Island, precisely the disputed waters in this case. So in her own description, and this is the description that the court of appeals cites, it's a disjunctive use of Strait of San Juan de Fuca and the disputed waters in this case. Now, the fifth and final point as to why I don't think you can possibly read the 2000 decision as resolving the disputed waters issue in this case is the linguistic geographic analysis that this court employed when discussing the Admiralty Inlet, which it did include. Now, what the court said is first. On that point, we reversed Judge Rothstein, didn't we? Exactly, Your Honor. And the analysis that you applied to reverse Judge Rothstein applies exactly to the disputed waters in this case. If you apply that analysis, it must come to the conclusion that the disputed waters are within the Lummi's fishing rights. And here's exactly why. Here's what the court said about Admiralty Island. First, it said linguist, I'm sorry, as to Admiralty Inlet. That analysis applies first linguistically. Just as for Admiralty Inlet, there's no indication in Judge Bolt's 1974 decree that the waters west of Whidbey Island, the disputed waters in this case, were separate from northern Puget Sound. He doesn't use them in the disjunctive ever. Second, and this is the key point, as a geographical matter, just as for Admiralty Inlet, the disputed waters, and I'm quoting from the 2000 decision, quote, would likely be a passage through which the Lummi would have traveled from the San Juan Islands to the present environs of Seattle. So Judge Bay, if you look at ER 171, and I'll point it out on the map here as well, if you start at San Juan Island, and everyone agrees these are Lummi fishing waters, and you look to the present environs of Seattle, which are not on this map. It's southeast of the map. What the court said in 2000 was, if you draw a line, the Lummi would have likely necessarily have had to pass through Admiralty Inlet to get from San Juan Island to the present environs of Seattle, both their fishing areas. And because they were- But, Mr. Senator, let me interrupt you for a second. Picking up on a question that was put to you by Judge Rawlinson, does the right of transit through the disputed area convert it into a usual and accepted fishing area? Judge Bay, normally, no. If you were working without any decision from Judge Bolt, and you were looking at a new area, no. But here, this is what this court said in 2000. When you're starting with Judge Bolt's decree that says all of the waters from the Fraser River to the present environs of Seattle and the northern Puget Sound are within the Lummi fishing right, to decide whether a subsection of those waters is enough, you can either look for evidence of fishing or travel through those waters. And that's why what this court did in its analysis of Admiralty Inlet, it did not point to an iota of specific evidence of fishing in Admiralty Inlet. You can look at the 2000 decision. It's at ER 65. No evidence of fishing whatsoever. What it points to is that it likely had to travel through that waters. This was repeated in this court's upper Skagit decision just a couple of years ago in 2010. When it was looking at the fishing rights, it said it's the burden on the challenging tribe, when you're talking about the relevant waters of the Puget Sound, quote, to show no evidence before Judge Bolt of fishing or travel. It used the disjunctive, fishing or travel. So this argument about the transit rule would be a proper argument if we were talking about an area that was not already addressed by Judge Bolt. But once you're within the decree and interpreting the decree, just like this court said in 2000, just like it said in the upper Skagit decision in 2010, all you need is evidence of travel or fishing. And we submit there is, if you have to travel through Admiralty Inlet to get from San Juan Island to the present environs of Seattle, it is undisputed that you would have to travel through the disputed waters to get there. I shouldn't say undisputed. The other side drops a footnote. This is on page 38, footnote 14 of their brief, one sentence suggesting that maybe there is some inside passageway that they could have used east of Whidbey Island. The problem, of course, with it. Mr. Simon, what remedy would you ask us to give you? Your Honor, I think you would just apply your 2000 decision. And as I said, based upon the record before you. No, no, no. What ruling do you want from this panel? This court should reverse the lower court and hold that the disputed waters here fall within the Lummi's fishing areas. You want us to get right to the merits. I think so. Just like this court did with Admiralty Inlet. It looked at the map, the record, and decided Admiralty Inlet. It can look at the map, the record, apply the exact same analysis, and you would come to the exact same conclusion. The only response they offer is that one sentence in footnote 14 that suggests an eastern passageway east of Whidbey Island. Of course, if you took that passageway, you wouldn't be going through Admiralty Inlet. And therefore, it would conflict. I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Thank you. May it please the court. My name is Lauren Rasmussen. Just a minute. Judge Bea, we're looking at SCR 64 at this point. My name is Lauren Rasmussen for the Fort Campbell's Founding of the Amistown Scallam Tribe. So what you've just heard is the finding of fact 14 that says transit alone does not establish UNA has now been overruled based on the 2000 decision in the USP Lummi case. Unfortunately for the Lummi, the upper Skagit case finds the opposite of what they said. In that case, as Judge Martinez recognizes in his summary judge decision, the designation from two, from one area to another, does not necessarily give you the right to fish along the way. Help me with something that I find a little confusing. And I use the district judge's names not out of criticism, but there have been a bunch of different district judges on the case. But your client first went in following this decision in 89-2 and the appellate review of that and asked the court to hold the Lummi in contempt for fishing in this disputed area, if you'll allow me to use that term. And Judge Martinez said, no, you have to file a new proceeding. Yes. So you did. That was 11-02? Yes. And then in 11-02, he says, OK, you filed your new proceeding just as I suggested, but the whole case was decided in 89-2, so I'm going to rely upon law of the case. I find that a little inconsistent. Help me with that. Well, Your Honor, we were the ones that first approached the court and asked for a finding of contempt because they were violating a clear order of the Ninth Circuit, which is a published decision. So you were saying that they are absolutely, so I'm going to approach SCR-64. Let me try. OK. You were saying this issue's already been decided. Yes. In 89-2, despite what the Ninth Circuit did, it's now established all of the straight is column. None of it is Lummi, correct? Yes. And there's no need to have another hearing or another brief or anything else. All you need to do is to tell the Lummi, you can't fish here. It's not part of your UNA. That's exactly what we asked for, but because of the procedure under paragraph 25 of the court's continuing jurisdiction, the court felt that in order to invoke the jurisdiction of the court, we had to have a meet and confer and start a new sub-proceeding. And so he felt that the procedural and in the case management method, that we had to follow this new step in order to hold Lummi in contempt. So this is procedural? So this is procedural. It was viewed as procedural only, and in fact, in a footnote of that order, which Judge Martinez cautioned nobody to ever cite, which the Lummi disregarded, he said, I'm going to hold on to your exhibits and I'm going to expect to see you again. File your new proceeding and we'll resolve this issue. Counsel, may I ask you, you took the position that the Lummi were fishing in violation of the 2000 decision by the Ninth Circuit? Yes, absolutely. OK, so what language in the Ninth Circuit decision were you relying upon to support your argument that the Lummi were in violation of their decision? Well, here you're going to find our argument is much simpler. The Ninth Circuit decision finds that Lummi may not fish in the Strait of Juan de Fuca. The court also found that the Lummi may fish in Admiralty Inlet and then define that inlet as the waters west of Whidbey Island separating that island from the Olympic Peninsula. Lummi stands here today and argues that those definitions aren't applicable to them. And I'm going to approach SER 64. I'm going to ask you to look at the far right corner of SER 64. Do you see where the language is? It says Admiralty Inlet. This is the definition of Admiralty Inlet that's been widely accepted in this case and was adopted by Judge Beeser. Right here in the far right corner, you see the term Admiralty Inlet. That is where Lummi was allowed to fish. And if you see the regulation going up through the Strait of Juan de Fuca, the entire area amounted to 310 square miles of what our experts say is, in fact, the Strait of Juan de Fuca. And if you don't believe our experts, we refer to Judge Martinez, who has had the lucky job of being in charge of USV Washington for the last decade, who's from western Washington, made the decision that Admiralty Inlet is part of Lummi's UNA. And it does not stand- That's in the lower right corner. Lower right corner. Admiralty Inlet, so that's right here. Right. This is where they can be, and this is where they went. And they took all in total 310 square miles of additional water as if the decision had never entered, as if they had prevailed on almost every element of their claim. So as the result of 89-2, the sub-proceeding, and the, if you will, the amendments from the panel that I sat on with Judge Beeser, it's clear that the Lummi have UNA in the Haro Strait. Yes. In the Rosario Strait. Yes. And in Admiralty Inlet. Yes. So if there had been no further dispute, it would be clear that the Lummi can fish up in Rosario and Haro, if you will, and then travel down to the Admiralty Inlet to continue their UNA fishing rights, correct? Exactly. That's what the Bolt Decision Finding in 514 says. Okay, here's my question. Has it ever been resolved in any proceeding whether the travel from undisputed Lummi fishing rights, Rosario, Haro, to other now established fishing rights, Admiralty Inlet, whether that established any UNA? Yes, it's been decided to the contrary, that travel alone did not establish UNA. So Finding of Fact 14, Judge Bolt recognized that travel did not establish UNA. In the Upper Skagit case, which was in front of this court in 2010, 590 F3D 1020, contrary to what the Lummi said, that was a description that was from Bashan Island to the Fraser River, it was the Suquamish tribe, and they argued that they could have gone up and down, they had the right to travel, and necessarily included all the waters in between. I thought there was some evidence in the Bolt proceeding that the Lummi not only traveled, but fished in that travel area. There is no evidence. CDR 17-22? I'm not sure what that is, but all I know is that we're not relitigating 89-2, so we're not going back to the original Bolt. I'm not referring to 89-2. I'm saying, isn't there evidence in the original U.S. versus Washington, the original Bolt decree, that the Lummi not only traveled in the disputed area, but also fished in it? Not evidence that the court adopted. Judge Coyle explicitly looked at all the evidence that was presented to Judge Bolt, and he found that there was not enough evidence to allow them to fish there. And that decision was made in 1990, and it was affirmed in 1998, applicable to the law of the case. One thing that's really, really important here, to me, as a Western Washington resident whose father lives on Whidbey Island, is to dispel the notion that this historical 160-year-old map is sometimes dispositive of any issues. I know you probably did some research and discovered that you have judges from San Francisco, Las Vegas, and Phoenix. Yes. But I want to tell you, I have spent lots of time on Decatur Island and in the San Juans. I know the area. You don't need to treat me like a stranger. Okay, no. I mean, just my concern is that it hits me personally as having family picnics on Whidbey Island and have somebody come in here and say, Your Honor, you should adopt this map of Harrow Strait, even though our own fisheries manager says, guess what? Harrow Strait ends right here. I can't see you, Counselor. She can't hear you. She can't hear you when you step away. SCR-64. Their fisheries manager adopted our definition of Harrow Strait. Their fisheries manager adopted our definition of Harrow Strait. We're here on law of the case, aren't we? Well, you could be law of the case or you could be raised judicata, Your Honor. Certainly, law of the case is certainly an issue and that's what Judge Martinez relied upon. Yes, he did. He said, when you filed your proceeding after the contempt thing, you filed 11-02. This issue is controlled by what happened in 89-02. It's law of the case. Yes. Correct? That's exactly what happened. Doesn't law of the case require that the law from the previous case to be applied to this case be the exact same case? And it is the exact same case. If you look at the request. That's why Judge Martinez asked you to file a new sub proceeding? Oh, well, in US v. Washington, there's been considerable disputes about what's the same case versus a different case. Sometimes people argue they're different cases. If they're different cases, this is barred by raised judicata. Judge Martinez treated this as law of the case and applied that doctrine. A lot of discussion has happened in Arizona v. California about how you should deal with continuing. A case with which I am intimately familiar, I assume. Well, I didn't mean to open that. I hate to do this, but I have to sit down to let my colleague speak. Before you sit down, let me ask you, what's your response to opposing counsel's reliance in the 2000 opinion on the language on page 452 that talks about admiralty inlet being part of the usual and accustomed because of travel through there? They're arguing that the Lummi case has changed the law and that this decision is now overruled. Well, they're arguing that they're relying on the language that was used by this court in making its ruling regarding admiralty inlet. So what's your response to that? Remember, admiralty inlet was given to them for two reasons. One, because Judge Bolt never used it as a separate geographic area. And so that was really the reason that carried the day. And in applying that reasoning, he said it was likely a passageway, but that doesn't mean that it overrules the plain language that they can't go through the Strait of Juan de Fuca when they pass. Thank you, counsel. Thank you. May it please the court, I'm Steve Swagy for the Lower Elwha Klallam Tribe. I don't have a lot of time left. I'll try to be brief. I think many of the points I wanted to cover have been covered already. I think Judge Martinez was clearly correct that the law of the case has already determined this. And I think I'd like to focus based in part on the sense I'm getting from some of the questions on sort of putting together what Judge Rothstein explicitly decided with what this court did with that decision on appeal. I think Judge Hawkins noted the discussion, the very emphatic discussion, I think you see it at ER 69 in Judge Rothstein's 1998 decision, where she says three times, there's no difference between the two areas. The one area covered by Judge Coyle's decision, which interpreted Judge Bolt and looked at the evidence that was before Judge Bolt and the areas sought by Lummi. It was the areas named by Lummi, the waters west of Whidbey Island and Admiralty Inlet as a separate piece that were included in that, which Lummi acknowledges today in its opening brief in this case. It was those waters that were at issue in front of Judge Rothstein and she denied the Lummi request in its entirety. When the appeal came up and Judge Martinez, by the way, thought that that was a key paragraph in Judge Rothstein's decision. When this case came up on appeal, Lummi accepted that the waters west of Whidbey Island outside of Admiralty Inlet are part of the Strait of Juan de Fuca. Judge Martinez quotes a statement from Lummi's appeal brief in 1999 that makes reference to the waters in the eastern portion of the Strait of Juan de Fuca that lie between Harrow Strait and Admiralty Inlet. So Lummi itself embraced the definition of the waters west of Whidbey Island that they're now arguing has never been decided. You've now focused on something that I'm wrestling with, my colleagues maybe also, and that is it's one thing to look at 89-2 just Judge Rothstein's decision and in which she says pretty clearly that it's all of the Strait down to and including Admiralty Inlet, not Lummi, correct? That's what she says. And then the Ninth Circuit says, yes, but Admiralty Inlet is Lummi, correct? Correct. Doesn't that make it a different case? Well, I don't think so. I mean, for a couple of reasons. First of all- From 89-2. Well, it's a different sub- I don't mean to be evasive here, Your Honor, but we have all these sub-proceedings in U.S. v. Washington. Some of them are inter-tribal. Some of them are tribal versus the state of Washington, tying back to the original reason that the case was brought. There is a strong commonality. It's a continuing jurisdiction case. And I don't think that the fact that we're in a new sub-proceeding is dispositive. I mean, one of the reasons- Let me ask the question this way. Was there ever a proceeding following 89-2 and the Ninth Circuit review of it in which any district or circuit court examined the issue of whether travel by the Lummi from the Harrow and Rosario Straits down to Admiralty Inlet established UNA, up or down? No, not since 89-2. Isn't that the strongest reason for sending it back? I suppose that would be a reason, perhaps the only reason for sending it back, but I think you first have to decide whether the question has been decided or not. I guess I wanted to make reference to- If what I just described had occurred, would that not strengthen the idea that law of the case applies? If that had happened? Yes. And the fact that it has not happened, doesn't that undermine your law of the case position? Tell me why I'm wrong. Well, certainly if something like that had happened, it would make it more emphatic. I don't think that the absence of that is in any way fatal. I guess one point I'm trying to make here, and it's rather succinctly summarized, and I'm sorry it's from a different circuit, but it is a case that Lummi cited in its reply brief. A legal decision made at one stage of a case that goes unchallenged in a subsequent appeal becomes the law of the case for future stages of the litigation. And I think that includes the overall case, U.S. v. Washington, and not just these distinct sub-proceedings. They are all related. After all, 89-2 was looking back at an earlier phase of U.S. v. Washington and interpreting the original Bolt decision. What part of your interpretation of 89-2 have they agreed is undisputed? Well, a good bit. They agree that Judge Rothstein decided the issue, as I understand it. They could have contested that on appeal to this court and said, wait a minute, waters west of Whidbey Island is something different. Judge Rothstein was wrong when she said three times in succession that there's no difference between the areas, and in fact, there's some line out there somewhere that separates the Strait of Juan de Fuca from these waters west of Whidbey Island, the non-Admiralty Inlet portion. We have to conclude that the Ninth Circuit's reversal of Judge Rothstein on Admiralty Inlet has no impact on the issues before us now. I think, General, that's correct, considering the way that this court defined Admiralty Inlet so as to exclude it from the Strait of Juan de Fuca. I think it was incumbent on Lummi at that time. I don't see any argument that really can be made now that couldn't have been made then. All right, Counsel, you've exceeded your time. Thank you. No problem. Thank you very much. I'm sorry for exceeding. No problem. We took you there. Your Honors, if I may make two brief points here. The first is in response to Judge Hawkins' last line of questioning. I think that is exactly right. The other side is ignoring this court's analysis that it applied to Admiralty Inlet. We're not saying that Admiralty Inlet is part of the disputed waters. What we're saying is if you apply the identical analysis, this court changed the analytical framework in 2000. If you apply that analysis to the disputed waters at issue in this case, something that no judge has done since the 2000 decision. If that's true, why didn't your client come in immediately after the Ninth Circuit decision, giving your client UNA and Admiralty Inlet, and ask for a new sub-proceeding and saying the game has changed. The discussion before was Admiralty Inlet was not in play. Now it is, and we want to have a proceeding where we can establish that travel from Rosario and Haro straights down to Admiralty Inlet established UNA in the disputed area. That never happened, did it? Your Honor, it did not. Because my client felt based upon a fair reading of the Ninth Circuit's opinion that it did not cover this area. Let me give you two reasons. Believed on a fair reading, on their reading of the Ninth Circuit's opinion, it did not cover it. And I think that reading is clearly right. And I say that for two reasons. One is there's no logical way you can apply this court's analysis to Admiralty Inlet, which focused solely on travel and come to a different conclusion about the disputed waters in this case. Reason number one. Reason number two is when this court characterized the Strait of Juan de Fuca as excluded, it defined the Strait of Juan de Fuca as waters further west than any other designated loomy fishing area. San Juan Islands, Haro Strait are designated loomy fishing areas. If the Strait of Juan de Fuca is west of those waters, it cannot possibly encompass the disputed area, which is east of San Juan Island and Haro Strait. No judge since this court's 2000 decision has tackled those two fundamental points, which I think irrefutably, they haven't argued the merits. They're arguing law of case only. If you apply the merits, you don't have to remand this case. That is simple application for this court to do reverse and give those waters to the lummy, just as it did with Admiralty Inlet in 2000. All right, thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the week. We are adjourned.
judges: Hawkins, Rawlinson, Bea